Good morning, your honors. May it please the court. My name is Edward Rose. I represent Jennette Dunkle. I'd like to reserve one minute for rebuttal. Your honors, in this case, issue preclusion does not apply to Jennette Dunkle's warrantless seizure claim. That's because the standards for removing a child without a warrant are different from the standards governing the court's probable cause determination at the temporary custody hearing. Can I ask you a preliminary question? Yes, sir. Is this claim brought on behalf of Ms. Dunkle, the mother? Yes. Why does she have a Fourth Amendment claim? I understand that the child may have a Fourth Amendment claim to being seized without... Because, your honor, because under the Wallace v. Spencer case, to lawfully execute a warrant and take somebody's child away, there must be specific articulable evidence. No, I understand the legal basis for the claim. I'm asking why the claim resides with the mother as opposed to the child. And nobody raises the issue in this case, but we recently had an in-bank case involving this issue, and it seemed clear to us in that case that the Fourth Amendment claim is the child's claim, not to be seized without a warrant, not the mother, the child, not the property of the mother. But having said that, no party raises that here. I thought this was a substantive due process claim. You're terminating... You were interfering with the parental relationship by removing the child. That's what the claim... I thought that's what the claim was. But that's not the warrant. You've got two separate issues here. The parental rights are terminated later down the road. Right. And we know that. That's not in front of us. But they take the child from the hospital. The child is with the mother in the hospital, and they come in and they remove the child from the mother's care. That's correct. And I thought that was a substantive due process claim, that you're depriving the mother of her ability to exercise her parental dominance. We're dealing with issue preclusion here, and we shouldn't take you off range. This case only got dismissed for issue preclusion. Right. I was just curious, because I think the actual right not to be seized without a warrant belongs to the child as opposed to the mother. But go ahead. I didn't want to take you off. Thank you, Your Honor. So we have that issue. And then, Your Honor, when you look at the record, there is nowhere in the record, starting from the child custody hearing in February through the trial, where the court even addressed the warrantless seizure. So, and we know in Alaska, issue preclusion, to have issue preclusion, the, if you want to preclude one of the items, it must be exactly equal to what was stated or litigated at trial. Assuming you're right, the damages are for those three days of deprivation? That's, there is, well, Your Honor, there's also the issue with the social workers lying and Well, but as I understand it, let's just focus on the Fourth Amendment claim. If you're right, and the mother then can, and then three days later there's a hearing and the child is taken away by a judicial officer, or the decision is confirmed by a judicial officer, it's for those three days of deprivation. Yes, three days. But then again, there was a temporary custody hearing that really occurred in February. In January, three days later, it's my understanding there was not a court hearing. There was a team decision meeting. Well, but that order was approved by the judge. It looked like it was done remotely. But it was signed two and a half months later. That's an open issue, Your Honor. Well, but it looked like the judge certainly was involved. I mean, I don't think it was just a, at some point the judge was involved in that determination. It's clear. I'm sure, yeah, but again, I don't know for sure on that issue. Well then, you know, somebody then just stamped the judge's... I doubt it, but I just don't know. Right. So Your Honor, the other issue is issue preclusion should not occur because those items, that item was not litigated in any of the hearings. And also, Your Honor, what's important, issue preclusion should not apply to the lies and fabrications of the defendants. Isn't that a harder argument to make? On the merits, the trial court found in favor of the state. It must've relied on something to do so. And the Alaska Supreme Court affirmed. And the evidence in the state proceeding, as I understood it, largely consisted of what you say are the lies of the defendants. So mustn't the Superior Court have found that some of those statements were true? Well, Your Honor, if we go to the Whig case in California, and Whig is very similar. Of course, in Whig, it says issue preclusion does not apply to claims that a defendant lied or fabricated evidence presented in a prior judicial proceeding. And that's because of the identity of issues requirement. When something is known to a government official that is materially different than what is stated at a judicial hearing, that issue was never litigated. Well, let's take one of the claims just to... One of the claims is that your client used narcotics. Okay. And somebody testifies that your client used narcotics, and the judge finds that your client used narcotics, and therefore, that's a reason to terminate parental rights. And you're not saying you've now discovered it was a lie. You contested that it was a lie throughout the proceeding. You said, we didn't. Your Honor, if I may say, they didn't bring out all the evidence, the social workers. They did not bring up exculpatory evidence. They just was one-sided in their presentation. When you say they, who are you talking about? The state. When they presented their case, and the social workers had a lot of other evidence, they did not bring that evidence up. So your argument is not that they lied, but rather that should have... That it was their obligation to, in effect, be officers of the court and bring forth all evidence. Well, that also... Plus the fact they did lie. And one of the lies was... What was the lie? One of them was at the temporary custody hearing, a report of harm. By the hospital. By the hospital. That was not true. There was no evidence to show a report of harm. And that was... So the way I understood what happened at the custody... At the temporary hearing, when the judge took evidence, and Ms. Dale testified, is that she adopted her petition and all the statements in the petition. Is that right? Did she testify orally at that hearing that they had received a report of harm to the child? I don't believe my client did, but... No, but Ms. Dale... Oh, yes, Ms. Dale said... Did Ms. Dale testify orally? Yes, she said there was a report of harm. By the hospital? Yes. Yes, Your Honor. And there wasn't any. Okay. With respect to the drug issue, what relevance does the second proceeding have, proceeding with respect to the child, Jackson? Oh, that was... She already lost her child, her first child. For using drugs? Right, but she was on a treatment plan, and she was actually on her way to becoming a great parent until the state seized the second child, which was right out of the hospital three days later. Did the district court deal at all with... Some of the timing of these two things is contemporaneous. Did the district court deal at all in this case with issue preclusion arising from the seizure of the other child? They never addressed... Because he held against you based on other stuff, but that would be open for the court to consider on remand, would it not? That's correct, that there was no litigation of that issue, nor, like I said in the briefs, the fabrication of evidence. And if you go to the costinic case... Well, the reason I ask is that there seems to be a finding that about a month before AP was born, your client was using heroin. Well, and Your Honor, she was on a drug... Again, those are allegations. No, no, I'm talking about the Jackson case. In February 2012, the trial court held a one day trial and it terminated parental rights. And I don't know when it found that drugs were being used, but there was a finding that during roughly the same time period, your client was using drugs and her other child was taken away from her for that reason. I think there may be issue preclusive effect to this case. I was asking whether the judge relied on that. I don't know, Your Honor. But I think the main issue is these issues were never truly litigated in the court. If they were litigated, there may have been a different outcome. Additionally, Your Honor... So in your view, what did the trial court proceeding in this case decide? The termination of rights. Well, sure. That's the remedy. What must necessarily have been decided for the court to grant that remedy? The court has to necessarily decide under Alaska law that your client was an unfit parent and that the child was in danger? Aren't those the prerequisites for severing parental rights? That's not for... The trial court did not consider the warrantless seizure. That's right. But I'm talking about your lie claims, not your warrantless seizure. That was never litigated, Your Honor. Let me ask, what must the trial court have decided in the first proceeding necessarily? In the first proceeding, the temporary custody... I'm sorry. In the proceeding, in order to sever parental rights in this case, what must the Alaska trial court have necessarily decided? All that they can decide is that based on the issue, she should not have rights to her child. That's the bottom line. What's the factual predicate? Because... Because why? One of them was the drug usage, but it never came out of trial, but she was on a treatment plan. And there was a whole bunch of other issues here, Your Honor, that never got litigated. Okay. But what must... What was litigated? I'm still stuck on this. What must have the trial court found in order to sever parental rights? They actually relied on the social worker's testimony. About what? Oh, about... Okay. About the drug usage. Does Alaska law... I assume Alaska law says parental rights may be severed if the parent is unfit, or the child is in danger, or some factual predicate. What must we assume based on the trial court's severing of parental rights and the Alaska Supreme Court's affirmance of that, that the trial court found as a matter of fact? Well, that she was unfit based on drug usage and some other issues. Okay. And that's an issue that the federal court must treat as true. Yes, the termination, but not how we got to the termination, because there was issues, Your Honor, that were never litigated. Okay. And that's the reason why we have the federal lawsuit. Okay. You're over your time. Thank you. May it please the court. I'm Ruth Botstein, Assistant Attorney General for the State of Alaska, on behalf of the defendant, Apolise, in this case. Jeanette Dunkel is asking the court to award her $2 million in money damages based on what she characterizes as an improper removal of her drug exposed newborn from her custody, followed by what she calls a kangaroo court proceeding in the Alaska State Courts that allegedly infected and directed by false statements of the defendant's social workers. Although she admits that it may well have been in her daughter's best interest to terminate her parental rights, she nevertheless wants to use the federal courts to relitigate the issues of her parental fitness. Deal first with a warrantless seizure, if you will. I don't see how the state court could have possibly decided the legality of the initial seizure. You're never in front of it. The state court did decide, I assume that it was a good idea to have seized her. But did it really make a decision that it should have been done without a warrant? That the threat of harm was imminent? The court found, I mean, the court's February 2nd order says that maintaining the child in custody was necessary to present further harm to the child, which is necessarily a finding that harm has occurred. And in fact, that order includes a no contact provision that even under the supervision of OCS, Alaska's Child Welfare Agency, it was not safe for the child to have any unsupervised contact. You may well, it sounds to me like you have a heck of a case if this issue gets tried. That's not my question. My question is, was it tried already? In other words, did the state court necessarily find that it was impossible or difficult or something, that the warrant requirement was excused in this case? I don't see that anywhere in the state proceeding. I see lots of evidence that suggests that if that issue were tried, you'd win it in a minute. The question is, was it tried? Well, I mean, I think that's the central dispute under the collateral estoppel test. Our contention is, if you look at that order, which incorporates the idea that there has been harm to the child, that removal and continued removal is necessary to prevent further harm. That's true in every severance case. You can't begin severance proceedings unless there's either harm to the child or the danger of harm to the child. Sure, but Alaska law...  I disagree, Your Honor, because Alaska law allows for OCS to take custody, but then for the court to nevertheless having asserted legal custody to place the child back with the parents. So there are circumstances where what the court is saying is, we have probable cause to believe the child is in need of aid, but nevertheless, we don't see a significant enough danger that means the child can't be in the home. The child is in the hospital in this case? The child was in the hospital when she was removed. And how long after birth? Three days. And was the mother on her way out the day she was removed? I don't... I'm not sure the record reflects that, Your Honor. There's a period of time here in which a warrant might have been obtained. I'm not saying it should have been obtained, but I'm not sure why the state court proceedings necessarily decided that in this case. Well, what the record reflects, Your Honor, and what the state court found was that the mother was using drugs. As the court pointed out, she was a daily heroin user during her pregnancy, that the child was born at 38 weeks at four pounds, 10 ounces. The court specifically found that was because of the drug use. It couldn't be explained by a prescription several weeks earlier, which was her explanation. And in fact, her complaint admits that she was nevertheless breastfeeding the child. She has drugs in her system. She is breastfeeding the child. And that is acute and immediate harm to the baby that justifies the warrantless removal. So let's switch over for a second to the so-called lies portion of this case. It seems to me that the trial court in this case must necessarily have found that the mother was a drug user and that the baby had drugs in its system. Absolutely, Your Honor. And Ms. Dale, the named defendant in the case, was the only OCS witness at the temporary custody hearing and the star OCS witness at the termination trial. There's simply no way the court could have reached those conclusions and ultimately terminated the rights without finding those statements to be credible. If she is not a credible witness, there's no basis for asserting temporary custody or for termination of the rights in the end. Now, in this case, Ms. Dunkel says, well, she said that and the court found it maybe, but I've now discovered she was lying. I didn't have drugs in my system. You know, implausible. Does she get to bring a 1983 suit saying, yeah, they found that, they found it on false evidence? She does not. That was necessarily litigated and decided in the child in need of aid case, because otherwise there is no child in need of aid case if those statements are lies. The termination order and all the child in need of aid orders indicate that the court found the social worker statements to be credible. That is an issue that was litigated and decided. And we've cited cases to the court holding that social worker credibility is always an essential issue in a child in need of aid case. Sure, we found them credible, but their allegation in this case, and I don't mean to suggest it's true, their allegation in this case is that they fooled the court. They came in and testified about stuff that wasn't true. The poor court was fooled and found that it was true. We've now discovered that it's not. I don't know how they're going to prove that if there was heroin in the baby's system, but that's a separate issue. Why isn't that an issue that wasn't decided by the state judge? In other words, whether the witness was suborning perjury, if you will. Well, because again, Your Honor, if the trial court had believed that the witness' statements were perjurious, then there's no basis to hold the child. There's no basis for state custody. There's no basis for termination. And this is exactly the... nurses or social worker is falsifying evidence. Where did Ms. Dunkle raise that to present it to the court so they could question the veracity of what she said? If she says it with authority and there's no challenge to it, then what's the court supposed to do if the allegation is what she said was a falsehood? There were no reports from the hospital about this and the other alleged falsehoods. Well, she had numerous opportunities to cross-examine the witness about that evidence, and she had opportunities herself to testify about that issue and to call witnesses that would delve into the supposed lies and create that. And the fact that she failed to do that at any point, to make that showing and to convince the court that there was... that these were false statements is now conclusive and binding upon her and has preclusive effect. And to the extent, Your Honor, that the legal doctrine doesn't preclude the case, the equitable considerations should. And that's the reason we've made the argument that the court should extend the Hecht v. Humphrey equitable doctrine to encompass this type of proceedings. I mean, at its essence, Ms. Dunkle's argument is this child was removed several hours too early, and despite the fact that she concedes that it may well be that her parental rights should have been terminated, she nevertheless wants to use the court's resources to relitigate those issues and attempt to... Let me ask you this. Counsel was going to mention, raise our case of Kastanich. How does that... how does that fit in here? It seems to suggest that this kind of claim can go forward. Well, the collateral estoppel holding of Kastanich is in a footnote. It's not clear to me that... We stick to good stuff in footnotes all the time. It still counts. So what does it say? True, Your Honor. Well, in that case, the question was whether there was a... there had been a license revocation. And what the court said in footnote 10 was the issue of... in the license revocation was whether the administrative law judge exceeded his authority in looking at the social worker reports, whether they were true or not. And the issue in the section 1983 case was whether there was deliberate fabrication of evidence. In this case, there's no disconnect there. The issues that were litigated in the child in need of aid case come down to, was the child in danger? And that is the same issue that is sought to be relitigated here. So there's no disjunction there. And one of the things that's notable about this case is there's no showing of any change in circumstances at any time. I mean, some of the court substantive cases are ones in which between the time of removal and the time of trial, or between the time of... there is some change of circumstances, some reason to believe that in fact, the removal finding might not be correct. And there's none of that here. So we would ask that the court affirm the judgment of the district court dismissing the case in its entirety. All right. Thank you. Thank you, Your Honors. Maybe one minute for rebuttal. Your Honor, I'd like to point to the court's attention that AK47.10142E talks about, when temporary custody is held, the court shall determine if probable cause exists for a child to be in need of aid. Nothing about warrantless, about looking at the warrantless removal. Additionally, Your Honor, I think what's important here, opposing counsel said the judge found the misdale credible. If you look at AER092, he says, credible to the extent of trying to get a hold of misdale, credible to that extent only. He didn't rule on credibility on anything else. But he couldn't have removed custody simply on the basis of being credible on the extent of trying to get a hold of her, could he? That's what he said in... Well, no, no, that's not what he said. He says, I find her credible to that extent. But surely in severing parental rights, he had to find something more than if the social worker couldn't get a hold of her. Well, Your Honor, I understand, but these hearings only last less than two hours. So it's very difficult in a two-hour timeframe to let people... I was going to ask you a question. With respect to use of heroin, I take it your client's defense is that she was on a treatment program and that this was in her blood from treatment. Well, that's one issue. Plus the kidney surgery, she was on... With respect to all those issues, didn't she have a fair opportunity to raise those in the severance proceedings when the state said, you're on heroin, the baby's got heroin in its system? Couldn't she have said, here's my excuse? So I'm not sure why it is that issue wasn't fully litigated already. Because in child custody cases, termination, the trials aren't extensive. It's only like one or two hours. Which could... Was she prevented from saying, wait a minute, Your Honor, this may look bad, but I've got an excuse. I had surgery. That's why this is there. These are not things she just discovered. She knew that back then, didn't she? Yeah. Yes. Had she at least had an opportunity to raise those issues? Did she not? Well, we don't think so, Your Honor. I know it sounds like... And also, Your Honor, heck would not apply in this case because federal habe corpus is not available to dunkel through no fault of her own based on a layman case. Okay. Thank you, counsel. Thank you, Your Honor. Thank you. Thank you, counsel. The matter is submitted at this time.
judges: Fisher, Paez, Hurwitz